UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DENNIS G. LACHANCE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:14 CV 992 DDN |
|  | ) |  |
| CAROLYN W. COLVIN, | ) |  |
| Acting Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM

This pro se matter is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Dennis G. Lachance for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

Plaintiff was born on July 22, 1951. (Tr. 63.) He protectively filed his Title II application on May 10, 2011, alleging a January 1, 2011 onset date and alleging disability due to post traumatic stress disorder (PTSD), depression, back and joint pain, and headaches. (Tr. 132-34, 152.) Plaintiff's application was denied initially and he requested a hearing before an ALJ. (Tr. 63, 78-84.) On April 16, 2013, following a hearing, an administrative law judge (ALJ) found that plaintiff was not disabled under the Act. (Tr. 10-18.) The Appeals Council denied his request for review. (Tr. 1-4.) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II.  MEDICAL AND OTHER HISTORY

Plaintiff received counseling for depression at Psych Care Consultants from February through August 2011.  (Tr. 227-36, 315-19)

On March 4, 2011, plaintiff saw his treating physician, Douglas Parashak, M.D., for medication refills.  He had Type II diabetes and had been feeling some numbness in his feet.  His exam was generally normal and revealed full range of motion of his neck, no edema in his extremities, normal sensation, and adequate pulses to his feet.  Plaintiff's diagnoses were diabetes, depression, and hypertension.  His medications included, metformin, for diabetes; Zoloft, an antidepressant; quinapril, for high blood pressure; and sulfidic, a non-steroidal anti-inflammatory drug (NSAID) for arthritis in his shoulder.  (Tr. 211.)

On July 19, 2011, plaintiff underwent a psychiatric Review Technique and Mental RFC Assessment under psychologist Marsha Toll, Psy.D.  Dr. Toll believed that plaintiff had moderate limitations in two areas and had no significant limitations in all other areas.  (Tr. 237-50.)

Plaintiff saw Dr. Parashak again on August 25, 2011 for a six-month evaluation and had "no real complaints."  (Tr. 269.)  His blood sugars were well controlled and his arthritis and hypertension were stable.  (Tr. 269-71.)

On August 29, 2011, plaintiff underwent an orthopedic consultative examination performed by Charles Mannis, M.D.  His chief complaints were problems with both wrists, numbness in his right hand, problems with both shoulders, an old fracture of the left ankle with pain, and a gunshot wound from 1990 to his hips.  He had full range of motion of his cervical spine and very slight restriction in range of motion of his lumbar spine.  He had a normal stance and was able to ambulate without assistance.  Dr. Mannis recommended limitation of climbing, standing, and walking for any period of time.  Sitting would not be restricted. (Tr. 253-59.)

Plaintiff saw Dr. Parashak on January 25 and September 17, 2012, for markedly elevated blood sugars.  He had not been compliant with checking sugars and stated that he

could not afford his medications. He was diagnosed with uncontrolled diabetes with neurological manifestations. Dr. Parashak had a long discussion with plaintiff about controlling his diabetes, but noted that he doubted the patient would comply with his instructions. (Tr. 262-68.)

In December 2012, plaintiff began treatment at the Veterans Affairs Medical Center (VA) for his primary care and was diagnosed with depression, high blood pressure, and diabetes. He had normal muscle tone and strength, good posture, normal range of motion of all of his joints, intact cranial nerves, and a normal gait. (Tr. 354-64.)

**ALJ Hearing**

On January 16, 2013, plaintiff, represented by counsel, appeared and testified to the following at a hearing conducted by an ALJ. (Tr. 23-45.) He was 61 years old. He completed his GED and some junior college. He worked for Anheuser Bush for 37 years and receives a $2,500.00 monthly pension and continued health insurance. He worked as a laborer there, and in 2000 became a lab technician. He retired because the company downsized and outsourced his job. (Tr. 23-26, 28.)

He was diagnosed with diabetes about ten years ago and started taking insulin two years ago. He has residual problems from a compound fracture to his left ankle. He has arthritis in his wrists, shoulders, and elbows, and almost no feeling in his right hand. He began seeing a doctor for depression in 2011 but stopped going after less than six months. He has been treated by a psychologist at the VA for his depression since the end of 2012. (Tr. 27-31.)

He served in Vietnam for 19 months and was honorably discharged. In 1990 he was the victim of a shooting resulting in a gunshot wound in his side. He has injuries as a result of that incident, including loss of part of his pancreas, small and large intestine, and problems with his right hip. He takes medication for high blood pressure, depression, and blood sugar, but nothing for pain. He does not take medication for his arthritis. He does not like pain medication, such as hydrocodone, because he does not feel comfortable

taking drugs. He has pain in his upper back. He loses his balance and will fall when in an enclosed space. He can stand without having to hold onto any support for about six minutes. He can walk a couple hundred yards without needing to stop. (Tr. 31-36.)

He spends a lot of his day watching TV. He is most comfortable sitting in a recliner. He can cook simple meals using the microwave and toaster. He does not do household chores. He stopped working at Anheuser Busch because his job was eliminated. He once missed a week of work due his back problems. He needs to use the bathroom frequently in the morning. He cannot perform light work because he thinks he would fall. He has arthritis in his wrists causing him to drop things and a loss of feeling. He weighed 210 pounds when he worked at Anheuser Busch and is now down to 160. The VA advised him that he has Hepatitis C which might explain his weight loss. (Tr. 36-41.)

Vocational Expert (VE) Delores Gonzalez also testified at the hearing. The ALJ asked the VE to assume a claimant of the same age and educational background as plaintiff who was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for up to 6 hours in an 8-hour workday, and sitting for up to 6 hours in an 8-hour workday. The hypothetical claimant could occasionally climb ramps and stairs, stoop, kneel, crouch, and operate foot controls with his left lower extremity. The hypothetical claimant could never climb ladders, ropes, or scaffolds, and needed to avoid concentrated exposure to unprotected heights and vibration. The hypothetical claimant could not perform work involving constant or regular contact with the general public or work involving more than infrequent handling of customer complaints. The VE responded that such a claimant could perform plaintiff's past relevant work as a laboratory technician. (Tr. 41-43.)

**Decision of the ALJ**

On April 16, 2013, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 10-18.) The ALJ found that plaintiff had not engaged in substantial gainful activity

since January 1, 2011, his alleged onset date. The ALJ found plaintiff had the severe impairments of residuals of a left ankle fracture, multiple myalgia or pain, and depression. The ALJ determined that plaintiff's diabetes and hypertension did not cause more than minimal limitations in basic work activities, and therefore were not severe. The ALJ determined that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. (Tr. 12-14.)

The ALJ found that plaintiff retained the residual functional capacity (RFC) to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and operate foot controls with his left lower extremity. He could never climb ladders, ropes, or scaffolds, and he needed to avoid concentrated exposure to unprotected heights and vibration. The ALJ further found that plaintiff could not perform work involving constant or regular contact with the general public or work involving more than infrequent handling of customer complaints. (Tr. 14.)

After comparing plaintiff's RFC with the demands of his past relevant work, the ALJ determined that plaintiff retained the ability to perform his past relevant work as a laboratory technician. Consequently, the ALJ found that plaintiff was not disabled within the meaning of the Act. (Tr. 18.)

### III. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers

evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## IV. DISCUSSION

In his pro se brief, plaintiff provides a summary of his medical history and injuries, asserting there are no jobs available for an individual with his injuries. He contends the

ALJs who reviewed his case wrongly referred to him as a felon.[1] The court will review for error the ALJ's evaluation of plaintiff's credibility, his residual functional capacity (RFC), and his determination that plaintiff could perform his past relevant work. This court finds no error for the reasons set forth below.

### A. Plaintiff's Credibility

An ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole, and a court cannot substitute its judgment for that of the ALJ. Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). The court finds that the reasons offered by the ALJ in this case in support of his credibility determination are based on substantial evidence.

In this case the ALJ considered that the record medical evidence did not support plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms. (Tr. 13-18.) See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, have on your ability to work."). The ALJ noted that contrary to plaintiff's allegations of disabling impairments, the record evidence indicated that plaintiff received conservative treatment for his impairments consisting primarily of medication. (Tr. 16.) See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (finding that a pattern of conservative medical treatment is a proper factor for an ALJ to consider in evaluating a claimant's credibility). The ALJ

---

[1] The court notes that the record evidence underlying the April 16, 2013 order, which is the subject of this appeal, makes no such references. (Tr. 10-18.)

noted that examinations performed by treating physician Dr. Parashak were generally normal and revealed full range of motion of plaintiff's neck, no edema in his extremities, and normal sensation. (Tr. 16, 211, 269.) Similarly, a consultative examination performed by Dr. Mannis in August 2011 revealed that plaintiff had full range of motion in his cervical spine and only a "very slight" restriction in range of motion of his lumbar spine. (Tr. 16, 254.) Dr. Mannis also noted that plaintiff had a normal stance and was able to ambulate without assistance. (Id.) Further, a December 2012 exam at the VA showed that plaintiff had normal muscle tone and strength, good posture, normal range of motion in all of his joints, intact cranial nerves, and a normal gait. (Tr. 357.)

As to plaintiff's depression, the ALJ noted that plaintiff received minimal treatment for consisting mainly of counseling and medication. (Tr. 15, 315, 318.) The ALJ also noted that plaintiff did not consistently seek mental health treatment. (Tr. 16.) Plaintiff received counseling at Psych Care Consultants from February through August 2011 when he stopped counseling, and did not resume counseling again until December 2012. (Tr. 16.) See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (claimant's failure to seek medical assistance for physical and mental impairments contradicts subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits). When plaintiff did seek treatment, health providers noted that he had normal cognitive ability, normal speech, normal thought processes, intact memory, and normal intellectual functioning. (Tr. 16, 230-31, 236, 356.)

The ALJ also noted that plaintiff was not compliant with all prescribed treatment, specifically noting that in September 2012 plaintiff had failed to increase his insulin dosage per Dr. Parashak's instructions. (Tr. 17, 262-63.) See Guilliams, 393 F.3d at 802 (failure to follow a recommended course of treatment weighs against plaintiff's credibility). Moreover, to the extent plaintiff is arguing that the ALJ erred in considering his noncompliance when his noncompliance was due to financial hardship, this argument fails. Plaintiff failed to demonstrate that he sought treatment available to indigent persons or that he was actually ever denied treatment due to an inability to pay. (Tr. 17.) See

Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (ALJ appropriately discounted claimant's argument that he could not afford medical care in the absence of evidence that he sought and was denied low cost or free care). Moreover, the ALJ noted, among other things, that plaintiff's alleged inability to afford medication was further undermined by the record evidence indicating that he received a pension and health insurance. (Tr. 17, 26, 349.)

The ALJ also considered plaintiff's daily activities in evaluating his credibility. (Tr. 13-18.) See 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms . . . which we will consider include . . . your daily activities."). The ALJ noted that in forms completed as part of the disability application process, plaintiff indicated that he cooked simple meals, wiped the kitchen counters, mowed the lawn, drove, and went to the grocery store with his wife. (Tr. 17, 171, 173.) Plaintiff advised Dr. Mannis that he was able to dress and undress himself and perform personal care. (Tr. 17, 254.) See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (activities that are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility).

The ALJ also noted other inconsistencies in finding plaintiff's subjective complaints not fully credible. (Tr. 13-18.) See Cox, 471 F.3d at 907 ("Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony."). Specifically, the ALJ noted that plaintiff stated that he quit working for reasons unrelated to his alleged disability. (Tr. 17, 28, 253.) Plaintiff testified that he retired from his job as a laboratory technician at AB because the company downsized and his job was outsourced. (Tr. 28.) Plaintiff also told Dr. Mannis that he stopped working because his job was outsourced. (Tr. 253.) The Eighth Circuit holds that the fact that a claimant left a job for reasons other than his medical condition is a proper consideration in assessing credibility. See Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009) (finding relevant fact that claimant did not leave his position as a laborer for an electric company due to back injury. Claimant was laid off from the position due to a decline in work, and date of his layoff was the same date as his alleged onset date of

disability."); see also Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (finding that claimant ceased work for reasons other than medical condition is relevant to credibility).

Based on the above, the court concludes that substantial evidence supports the ALJ's credibility finding.

**B.      Residual Functional Capacity (RFC)**

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. §§ 404.1545, 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996).

In this case the ALJ found that plaintiff retained the RFC to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. Plaintiff could occasionally climb ramps and stairs, stoop, kneel, crouch, and operate foot controls with his left lower extremity. He could never climb ladders, ropes, or scaffolds; and he needed to avoid concentrated exposure to unprotected heights and vibration. He could not perform work involving constant or regular contact with the general public or work involving more than infrequent handling of customer complaints. (Tr. 14.)

Substantial evidence, including medical evidence, supports the ALJ's RFC assessment. As discussed above, consistent with the ALJ's RFC assessment, physical

examinations performed by Dr. Parashak were generally normal and revealed full range of motion of plaintiff's neck, no edema in plaintiff's extremities, and normal sensation. (Tr. 16, 211, 269.) Similarly, Dr. Mannis noted that plaintiff had full range of motion of his cervical spine and only a "very slight" restriction in range of motion of his lumbar spine. (Tr. 16, 254.)

Dr. Mannis also noted that plaintiff had a normal stance and was able to ambulate without assistance. (Tr. 16, 254.) Providers at the VA noted that plaintiff had normal muscle tone and strength, good posture, normal range of motion in all of his joints, intact cranial nerves, and a normal gait. (Tr. 357.) Mental status examinations showed plaintiff had normal cognitive ability, normal speech, normal thought processes, intact memory, and normal intellectual functioning. (Tr. 16, 230-231, 236, 356.) Plaintiff was able to engage in a wide-range of daily activities including mowing, driving, grocery shopping, and preparing simple meals. (Tr. 17, 171, 173.)

This court concludes the ALJ properly determined plaintiff's RFC after evaluating all the record evidence regarding the effects of his impairments. Therefore, the ALJ's RFC assessment is supported by substantial evidence in the record as a whole.

**C.     Past Relevant Work**

Plaintiff argues the ALJ erred in concluding that he could perform his past relevant work as a laboratory technician. The undersigned disagrees.

Although not required to do so, an ALJ he may rely upon VE testimony at step four of the sequential evaluation process in considering past relevant work. See 20 C.F.R. § 416.960(b)(2) (2014) (". . . we may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work."). In this case, the ALJ relied on VE testimony to compare the demands of plaintiff's past relevant work with his RFC. (Tr. 18, 41-42.)

The ALJ asked the VE to assume a hypothetical claimant of the same age and educational background as plaintiff who was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking for up to 6 hours

in an 8-hour workday, and sitting for up to 6 hours in an 8-hour workday. The hypothetical claimant could occasionally climb ramps and stairs, stoop, kneel, crouch, and operate foot controls with his left lower extremity. The hypothetical claimant could never climb ladders, ropes, or scaffolds, and needed to avoid concentrated exposure to unprotected heights and vibration. Finally, the hypothetical claimant could not perform work involving constant or regular contact with the general public or work involving more than infrequent handling of customer complaints. In response, the VE testified that such a claimant could perform plaintiff's past relevant work as a laboratory technician. (Tr. 41-43.)

A VE's testimony "based on a properly phrased hypothetical question constitutes substantial evidence." Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999). Therefore, the ALJ properly found that plaintiff could perform his past relevant work as a laboratory technician and was not disabled. See Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the RFC to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."). Accordingly, this court concludes the ALJ did not err in his determination that plaintiff could perform his past relevant work.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.


                                                                                     S/ David D. Noce
                                        **UNITED STATES MAGISTRATE JUDGE**

Signed on August 17, 2015.